IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
 IN AND FOR NEW CASTLE COUNTY
STATE OF DELAWARE, )
 )
 ) I.D. No. 1206004370
 v. )
 )
BRANDON E. HARRIS, )
 )
 Defendant. )
 )

 Submitted: August 19, 2014
 Decided: November 25, 2015

 Amended Motion for Post-Conviction Relief
 DENIED

John A. Barber, Esquire, Law Office of John A. Barber, Wilmington, Delaware, Attorney for
Defendant Brandon E. Harris.

Matthew Frawley, Deputy Attorney General, Wilmington, Delaware, Attorney for State of
Delaware.

DAVIS, J.

 INTRODUCTION

 This is a criminal matter under Rule 61 of the Superior Court Rules of Criminal

Procedure. Before the Court is the Amended Motion for Post-conviction Relief (the “Motion”)

filed by Defendant Brandon E. Harris on June 13, 2014. Mr. Harris seeks relief due to

ineffective assistance of counsel. Specifically, Mr. Harris contends that his trial counsel failed to

advise him of the expiration date of a plea offer, and Mr. Harris was therefore prevented from

taking a more favorable plea offer.

 For the reasons set forth in this opinion, the Motion is DENIED.
 FACTUAL BACKGROUND

 On June 3, 2012, Detective Gary C. Tabor of the Wilmington Police Department

responded to the Christiana Hospital Emergency Room to investigate the shooting of Taryn

Ross. 1 Mr. Ross was shot in the abdomen, during an argument which took place at 3200 Miller

Road. Through an investigation, Detective Tabor developed Brandon Harris as a suspect in the

shooting. 2 Although the accounts of witnesses differ, the accounts were consistent in that Mr.

Harris drew a gun and shot Mr. Ross in the abdomen. 3 Detective Tabor interviewed Mr. Harris

who then admitted to shooting Mr. Ross, but claimed self-defense. 4 Mr. Harris stated that Mr.

Ross pushed him and then pulled a knife from his belt. 5 No witness reported seeing a knife of

any kind. 6

 On July 2, 2012, Mr. Harris was indicted for Assault First Degree, two counts of

Possession of a Firearm During the Commission of a Felony, Possession of a Deadly Weapon by

a Person Prohibited, and Aggravated Menacing. 7 On July 20, 2012, Eugene Maurer, Esq.

(“Initial Counsel”), entered his appearance on behalf of Mr. Harris. 8 On November 26, 2012, the

Court held a hearing on whether to suppress Mr. Harris’ statement to Detective Tabor, wherein

Mr. Harris admitted to shooting Mr. Ross. 9 The Court denied the motion on December 7,

2012. 10 A trial date was set for February 20, 2013. 11

1
 Gary C. Tabor, Affidavit of Probable Cause, Case No. 12 06 004370, June 6, 2012.
2
 Id.
3
 Id.
4
 Id.
5
 Id.
6
 State’s Response to Motion for Post Conviction Relief, pg. 1.
7
 Defendant’s Amended Motion for Post Conviction Relief, June 13, 2014, pg. 3.
8
 Id.
9
 Id.
10
 Id.
11
 Id.

 2
 At or near the time of the suppression hearing, the State and Mr. Harris engaged in plea

negotiations. 12 The State offered a plea to one count of Assault Second Degree and one count of

Possession of a Firearm During the Commission of a Felony, with a sentence recommendation

from the State for 4 years of unsuspended time at Level 5 (hereinafter referred to as “the First

Plea Offer”). 13 Under the terms of the First Plea Offer, Mr. Harris would be free to argue for the

minimum mandatory sentence of 3 years of incarceration. 14 The State placed a deadline of

January 27, 2013, for the acceptance of the First Plea Offer. 15 Initial Counsel explained the plea

offer to Mr. Harris, and recommended that it be accepted. 16 However, in his February 19, 2013,

Motion to Allow Acceptance of Plea and to Withdraw as Counsel, Initial Counsel states that he

did not advise Mr. Harris of the deadline nor did he advise Mr. Harris of the consequences for

failing to meet the deadline. 17

 In anticipation of the trial, Initial Counsel and Mr. Harris met on February 16, 2013, and

discussed the First Plea Offer. 18 Mr. Harris indicated that he wanted to accept the First Plea

Offer. 19 Initial Counsel communicated with the State that Mr. Harris intended to accept the First

Plea Offer. At this point, the State informed Initial Counsel that the First Plea Offer was no

longer available as the deadline to accept had expired. 20

 In his February 19, 2013, Motion to Allow Acceptance of Plea and to Withdraw as

Counsel, Initial Counsel admitted that the failure to advise Mr. Harris of the First Plea Offer

12
 Motion to Allow Acceptance of Plea and to Withdraw as Counsel, Feb. 19, 2013, at ¶ 3.
13
 Id.
14
 Id.
15
 State’s Response to Motion for Post Conviction Relief, pg. 2.
16
 Motion to Allow Acceptance of Plea and to Withdraw as Counsel, Feb. 19, 2013, at ¶ 4.
17
 Id. at ¶ 5.
18
 Id. at ¶ 6.
19
 Id.
20
 Id. at ¶ 7.

 3
deadline was solely his fault. 21 Initial Counsel goes on to state that “[c]ounsel was ineffective in

not advising the defendant that if the plea were not accepted by a certain date, it would no longer

be on the table. Therefore, but for counsel’s failure to advise the defendant of the plea deadline,

this plea would have been accepted and would have been entered.” 22 Citing Strickland, 23 Initial

Counsel stated that his “performance fell below the standard that would be required of

reasonably competent defense attorneys.” 24 Initial Counsel stated that but for the ineffective

assistance of counsel, there is a reasonable probability that the First Plea Offer would have been

accepted by Mr. Harris and would have been presented to the Court. 25

 Initial Counsel continued that “[s]ince it is counsel’s failure to advise the defendant of the

plea deadline in this case, which has caused the problem, counsel is respectfully requesting that

this Court allow him to withdraw so that this matter can be properly presented to the Court.

Additionally, it will in all likelihood be necessary for counsel to testify in order for the defendant

to pursue [the Motion to Allow Acceptance of Plea and to Withdraw as Counsel].” 26 On

February 25, 2013, the Court granted the application to withdraw as counsel and, subsequently,

appointed another attorney (“Subsequent Counsel”) to represent Mr. Harris . 27

 On April 29, 2013, Mr. Harris, represented by Subsequent Counsel, accepted a revised

plea offer (“the Second Plea Offer”). 28 Through the Second Plea Offer, Mr. Harris pled guilty to

Assault First Degree, and Possession of a Firearm during the Commission of a Felony. 29 Unlike

21
 Id. at ¶ 8.
22
 Id.
23
 Strickland v. Washington, 104 S. Ct. 2052 (1984).
24
 Motion to Allow Acceptance of Plea and to Withdraw as Counsel, Feb. 19, 2013, at ¶ 10.
25
 Id. at ¶ 11.
26
 Id. at ¶ 13.
27
 Defendant’s Amended Motion for Post Conviction Relief, June 13, 2014, pg. 4.
28
 Id.
29
 Id.

 4
the First Plea Offer which carried a minimum mandatory sentence of 3 years, the Second Plea

Offer carried a minimum mandatory sentence of 5 years.

 At the time of the hearing for the Second Plea Offer, on April 29, 2013, Subsequent

Counsel advised the Court that the Motion to Allow Acceptance of Plea had not been heard, 30

and that while Initial Counsel communicated the First Plea Offer to Mr. Harris, Initial Counsel

did not communicate the deadline for the acceptance of First Plea Offer. 31 Subsequent Counsel

also advised the Court that Initial Counsel had filed the Motion to Allow Acceptance of Plea

under Missouri v. Frye 32 and Lafler v. Cooper. 33 Subsequent Counsel advised the Court that the

First Plea Offer had a minimum mandatory sentence of 3 years, with a recommendation by the

State of 4 years, whereas the Second Plea Offer had a minimum mandatory sentence of 5 years. 34

During the hearing, the State advised the Court that, it was unwilling to offer the First Plea Offer

because the deadline had passed, and also because shortly before the matter was to go to trial, the

victim had been shot again and the State suspected that Mr. Harris was involved in that

shooting. 35

 Subsequent Counsel asked the Court to schedule the Motion to Allow Acceptance of Plea

for a hearing. 36 Mr. Harris also addressed the Court, and the following exchange took place:

 THE DEFENDANT: I wasn’t saying, like - - I wasn’t
 rejecting the plea. I was under the impression that I would get my
 old plea back because I never was told that it was an expiration
 date on it because I told [Initial Counsel] that I will take the plea.
 But when he sent the letter I was under the impression when I go to
 court that day the plea was going to be on the table. I didn’t know I
 had a certain day to make the decision.

30
 Defendant’s Amended Motion for Post Conviction Relief, June 13, 2014, Ex. F, Plea Transcript, 2:15.
31
 Id. at 2:21-3:4.
32
 Missouri v. Frye, 132 S.Ct. 1399 (U.S. 2012).
33
 Lafler v. Cooper, 132 S.Ct. 1376 (U.S. 2012); Defendant’s Amended Motion for Post Conviction Relief, June 13,
2014, Ex. F, Plea Transcript 3:5-10.
34
 Defendant’s Amended Motion for Post Conviction Relief, June 13, 2014, Ex. F, Plea Transcript 3:13-4:17.
35
 Id. at 5:12-23.
36
 Id. at 6:18-21.

 5
 Now I’m being offered five or more and I don’t - - I don’t
 fell [sic] like that’s fair. I’m not going to give you the impression
 that I’m perfect, I made mistakes. But I’m man enough to say that I
 was wrong and I apologize.
 THE COURT: Well, you don’t want to really get into that
 on the record, but what - - everything we’re doing today is not with
 prejudice to your pending motion to enforce the other plea.
 I’m just telling you, at this point, unless you win that
 motion, you’re going to trial on May 7th, 2013. Same thing as if
 you had a pending motion to suppression, you’re going to have to
 make certain types of decisions.
 I’m sure Mr. Armstrong talked to you about the fact that
 the Judge may not enforce the motion for the guilty plea back on
 December of 2012 and, so, then you’re going to be facing trial on
 all five charges, and instead you could plead to two. That’s some
 decision you have to make.
 If you’d like to talk to Mr. Armstrong more about that, I’ll
 let you do that. But I’m not going to crystal ball your motion and
 tell you what’s going to happen with the motion to enforce the
 plea. I’m just telling you right now that under normal principles - -
 just like a motion to suppress would occur. I can’t handicap your
 motion to enforce a plea at this point. If you reject the plea, the
 State does haven’t [sic] to keep the present plea on the table at all.
 It expires when?
 MR. ARMSTRONG: Today.
 THE COURT: Today. And then go to trial. And the State
 doesn’t have to make any additional plea of the day of trial. And if
 you do plea on the day of trial, the Superior Court wants you to
 plead to the lead charge, which I guess is the Assault First in this
 case.
 So, if you want to talk to Mr. Armstrong again I’ll let you.
 But you can be under any impression you want under the motion,
 that’s not a sure thing.
 THE DEFENDANT: Can I speak to him, Your Honor, for a
 second?
 THE COURT: Absolutely. You understand my point, Mr.
 Armstrong?
 MR. ARMSTRONG: Yes, Your Honor. 37

37
 Id. at 8:15-10:23.

 6
After further conference with Subsequent Counsel, Mr. Harris elected to take the Second Plea

Offer. 38 Subsequent Counsel advised the Court that Mr. Harris was entering his plea knowingly,

intelligently and voluntarily. 39 Mr. Harris’ counsel also continued as follows:

 MR. ARMSTRONG: I also discussed with Mr. Harris the
 fact that there was a pending motion that was filed by former
 counsel…and that if he entered this plea then the Court will not
 entertain that motion anymore and that the motion would be
 considered voluntarily dismissed, which means that it will be - -
 THE COURT: It’s moot.
 MR. ARMSTRONG: Moot. I didn’t want to use the term
 then I would have to - -
 THE COURT: Spell it. Over. Complete. Not to be heard.
 MR. ARMSTRONG: Not to be heard.
 And so he understands that and he has decided he wanted
 to entry [sic] the plea. He made the request to the State - - 40

During the plea colloquy the Court also had the following exchange with Mr. Harris:

 THE COURT: Okay. And you also understand, because
 we went over moot meant, is that your presently pending motion
 about to force the State to take the plea is not going to be heard by
 the Court?
 THE DEFENDANT: Yes.

 On May 31, 2013, Mr. Harris was sentenced to 5 years incarceration followed by

probation for the Assault First Degree charge, and 5 years of incarceration for the Possession of a

Firearm During the Commission of a Felony. 41 The Court found the Motion to Allow

Acceptance of Plea to be moot and it was not further addressed. 42

 On September 23, 2013, Mr. Harris filed a pro se motion for postconviction relief. Under

Superior Court Criminal Rule 61(g)(2), Initial Counsel was ordered to respond to the allegations

38
 Id. at 13:21-14:3.
39
 Id. at 14:2-3.
40
 Id. at 14:4-19.
41
 Defendant’s Amended Motion for Post Conviction Relief, June 13, 2014, pg. 4.
42
 Id.

 7
regarding ineffective assistance of counsel. 43 In his affidavit, Initial Counsel categorically

denied that there was any inappropriate conduct in his representation of Mr. Harris. 44 Initial

Counsel details several meetings with Mr. Harris, including a 45 minute meeting with Mr. Harris

and his family, on November 24, 2012, where all the facts of the case were reviewed, and where

Mr. Maurer communicated to Mr. Harris the details of the First Plea Offer. 45 At that meeting

Mr. Harris indicated that he was inclined to go along with the First Plea Offer. 46 Initial Counsel

further states that

 Notwithstanding the inclinations that the defendant had expressed
 during the time of our November meeting, when we got to the trial
 date, the defendant was a different person. He at that time rejected
 the plea that had previously been discussed, but he did not want to
 go to trial at that time. Rather, he asked me if I could continue the
 case so that I could get additional time to consider the plea offer. I
 was in fact able to reschedule the case on the day of the trial and
 also was able to persuade the prosecutor, Matt Frawley, to leave
 the plea open for a while. I subsequently confirmed all of this in
 my letter to Mr. Harris dated December 28, 2012. 47

On the initial trial date, Initial Counsel again spent 45 minutes with Mr. Harris, discussing his

plea options. 48 However, after that Initial Counsel did not hear back from Mr. Harris with

respect to his acceptance of the First Plea Offer. 49 Sometime thereafter, the State put a deadline

on the acceptance of the plea, and Initial Counsel did not communicate the deadline to Mr.

Harris. 50 Initial Counsel did not have an opportunity to communicate with Mr. Harris before the

43
 Order, June 17, 2014.
44
 Affidavit of Eugene J. Maurer, June 30, 2014, pg. 1.
45
 Id. at pg. 2.
46
 Id.
47
 Id. at pg. 3.
48
 Id.
49
 Id.
50
 Id.

 8
expiration of the First Plea Offer, although he made several attempts to contact Mr. Harris when

he realized that he had not advised Mr. Harris about the deadline for the First Plea Offer. 51

 PARTIES’ CONTENTIONS

 Mr. Harris contends that Initial Counsel was ineffective in representing him, because

Initial Counsel failed to advise Mr. Harris of the First Plea Offer deadline.

 In response, the State contends that Mr. Harris’ claim is without merit because (1) Mr.

Harris waived his post conviction claim on the record at the time of the plea, (2) Initial Counsel

was not deficient because he advised Mr. Harris of the initial plea offer and Mr. Harris chose to

reject it and (3) that Mr. Harris can’t show that there is a reasonable probability that if Initial

Counsel was deficient, the result of the proceeding would have been different.

 STANDARD OF REVIEW

 Rule 61 of the Superior Court Rules of Criminal Procedure (“Rule 61”) governs motions

for postconviction relief. Before addressing the substantive merits of any claim for

postconviction relief, the Court must determine whether Mr. Harris has satisfied the procedural

requirements of Rule 61. 52 Rule 61(i) establishes four procedural bars to postconviction relief:

(1) a motion for postconviction relief may not be filed more than one year after the judgment of

conviction is final; (2) any ground for relief not asserted in a prior postconviction proceeding is

barred; (3) any ground for relief not asserted in the proceedings leading to the judgment of

conviction is barred; and (4) any ground for relief previously adjudicated in any proceeding is

barred. 53

51
 Id.
52
 Younger v. State, 580 A.2d 552, 554 (Del. 1990).
53
 Super. Ct. Crim. R. 61(i).

 9
 The procedural bars contained in Rule 61(i)(1-4) may be rescinded only if there is a

means by which to do so in the applicable subsection of Rule 61. 54 Absent such relief, Rule

61(i)(5) provides additional reprieve from the procedural bars described in Rule 61(i)(1-3). 55

Under Rule 61(i)(5), “[t]he bars to relief in paragraphs (1), (2), and (3) of this subdivision shall

not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a

miscarriage of justice because of a constitutional violation that undermined the fundamental

legality, reliability, integrity or fairness of the proceedings leading to the judgment of

conviction. 56 Claims alleging ineffective assistance of counsel meet the “fundamental fairness”

and “miscarriage of justice” exceptions of Rule 61(i)(5). 57

 DISCUSSION

 A. Procedural Hurdles

 Mr. Harris’ original pro se postconviction motion as well as the Amended Motion for

Postconviction Relief, filed by Mr. Harris’ counsel, were timely filed, not more than one year

from the date of the conviction, thereby avoiding the procedural bar under Rule 61(i)(1).

 The Amended Motion is Mr. Harris’ first motion for postconviction relief with the

appointment of counsel, thereby avoiding the procedural bar of Rule 61(i)(2).

 The request for relief in the Amended Motion was asserted in the proceedings leading to

the judgment of conviction, thereby avoiding the procedural bar of Rule 61(i)(3).

 The claim asserted here, by Mr. Harris, was not previously adjudicated so the procedural

bar of Rule 61(i)(4) does not apply.

54
 State v. MacDonald, 2007 WL 1378332 *4 (Del. Super. Ct., May 9, 2007).
55
 Id.
56
 Super. Ct. Crim. R.61(i)(5).
57
 Webster v. State, 604 A.2d 1364, 1366 (Del. 1992).

 10
 B. Waiver argument

 The Court first turns to the waiver argument. In so doing, the Court must closely

examine the record. As held in Sullivan v. State, 58 the basis for the entry of a guilty plea must

appear on the record to permit appellate review. 59 A record affords numerous protections to the

defendant offering a guilty plea. 60 Prior to accepting a guilty plea, the trial judge must address

the defendant in open court. 61 The trial judge must determine that the defendant understands the

nature of the charges and the penalties provided for each of the offenses. 62 The record must

reflect that the defendant understands that the guilty plea constitutes a waiver of a trial on the

charges and a waiver of the constitutional rights to which he or she would have been entitled to

exercise at a trial. 63 The trial judge must also determine that a guilty plea is voluntary, and not

the result of force, threats, or promises apart from the plea agreement. 64

 At the time of the April 29, 2013, hearing, the Court was informed of Mr. Harris’ pending

Motion to Allow Acceptance of Plea. The Court explained to Mr. Harris that if he lost that

motion Mr. Harris’ case would be going to trial. The Court also gave Mr. Harris an opportunity

to further discuss with Subsequent Counsel whether he should take the Second Plea Offer. After

Mr. Harris indicated that he wished to take the Second Plea Offer, the Court advised Mr. Harris

that under those circumstances his motion would become moot. Subsequent Counsel stated that

he also explained that fact to Mr. Harris. Nevertheless, Mr. Harris wished to proceed and to

accept the Second Plea Offer. Finally, during the plea colloquy, the Court once again asked Mr.

58
 Sullivan v. State, 636 A.2d 931 (Del. 1994).
59
 Id. at 937.
60
 Sommerville v. State, 703 A.2d 629, 631 (Del. 1997).
61
 Id.; Sullivan, 636 A.2d at 937.
62
 Id.
63
 Super. Ct. Crim. R. 11(c); Sommerville, 703 A.2d at 632; Sullivan, 636 A.2d at 937.
64
 Super. Ct. Crim. R. 11(d); Sommerville, 703 A.2d at 632; Howard v. State, 458 A.2d 1180, 1184-85 (Del. 1983).

 11
Harris if he understood that by taking the Second Plea Offer it would mean his Motion to Allow

Acceptance of Plea would not be heard by the Court. Mr. Harris indicated that he understood.

 Based on these facts it is clear that Mr. Harris knew that he waived the relief sought in

the Motion to Allow Acceptance of Plea by taking the Second Plea Offer, and that his waiver

was knowing, intelligent and voluntary.

 As Mr. Harris’ waiver at the time of the plea colloquy is dispositive of this matter, the

Court does not need to reach and address the ineffective assistance of counsel arguments raised

by Mr. Harris.

 CONCLUSION

 Based on the arguments above, drawing all reasonable inferences, the Defendant’s

Amended Motion for Postconviction Relief is hereby DENIED.

 IT IS SO ORDERED.

 /s/ Eric M. Davis
 Eric M. Davis
 Judge

 12